THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| MARTHA A. FAGG, | ) | CASE NO. 5:12CV4029 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FINDINGS OF FACT**, |
| | ) | **CONCLUSIONS OF LAW,** |
| ERIC H. HOLDER, JR., | ) | **AND ORDER** |
| ATTORNEY GENERAL | ) | |
| OF THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

The following constitute my findings of fact and conclusions of law required by Fed. R. Civ. P. 52(a)(1) on plaintiff Martha Fagg's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Fagg claims that the defendant violated the ADEA by terminating her employment and by taking other adverse employment actions against her because of her age and retaliating against her for engaging in conduct protected by the ADEA. At the conclusion of the trial, and before oral argument, Fagg voluntarily dismissed her adverse-employment-action (discrimination) claim, and relied solely on her retaliation claim

This case involves the careers and reputations of several lawyers and a judge. The record shows that Martha Fagg, Stephanie Rose, and Teresa Baumann, the main disputants, are fine people and very good lawyers. Nothing worthwhile would be served by reciting a litany of facts, with "blow-by-blow" details, except to needlessly sully reputations or feed the voracious appetites of voyeurs.

With the foregoing in mind, I find as fact and conclude as law that Martha Fagg was not the victim of retaliation for opposing age discrimination. In brief, here's why:

**FINDINGS OF FACT**

1. In 1998, Martha Fagg was hired as Assistant United States Attorney ("AUSA") for the Northern District of Iowa ("Northern District") working on civil cases. The Northern District's main office is in Cedar Rapids, Iowa. Fagg worked in the branch office in Sioux City, Iowa. She was the only civil lawyer in Sioux City. At times material to this matter, Fagg was over 50 years of age. Fagg was very highly regarded by her "clients," particularly the United States Department of Agriculture. United States District Judges Donald E. O'Brien and Mark W. Bennett also thought very highly of Fagg. Those judges were situated in Sioux City, Iowa, and they had the most contact with Fagg. Fagg always received good ("successful" or "outstanding") annual performance reviews from her superiors in the Northern District before the matters described in this suit arose.

2. Stephanie Rose hired on with the Northern District as a criminal AUSA about the same time Fagg began her employment. Rose had very little contact or knowledge about Fagg because Rose was situated in Cedar Rapids, Iowa, at the main office, and because Rose did criminal work rather than civil work, which was Fagg's area of emphasis.

3. On or about November 24, 2009, Rose was appointed as United States Attorney for the Northern District of Iowa. At all times material to this matter, Rose was less than 40 years of age. Judge Bennett, who raved about Fagg, also thought Stephanie Rose did a terrific job as the United States Attorney. A few years after Rose was appointed as United States Attorney, Rose was nominated and confirmed as a United States District Judge in the Southern District of Iowa. At the time of her appointment, Rose was the youngest federal district judge in the nation.

4. Almost immediately after becoming the United States Attorney, Rose surveyed the staff and learned that five or so people had concerns about the Civil Division. Larry Kudej was the Chief of the Civil Division. Rose, who had been on the Northern District's management team before she was appointed United States Attorney, knew Kudej, regarded him as a good lawyer and a great person, but not an especially good manager. She also heard complaints that Fagg kept her own schedule in Sioux City rather than complying with the formal requirements of the time and attendance policy of the Department of Justice. Since Fagg was the only civil lawyer in Sioux City, Rose was additionally concerned with how Fagg might be supervised on substantive matters being so far away from the main office in Cedar Rapids. Rose did not want any lawyer to be "a free actor" whose work product was exempt from scrutiny. In 2010, Stephanie Rose signed a positive performance review of Fagg for the 2009 review period. However, Rose, of necessity, had to rely upon the opinions of others for that review because she had not been the United States Attorney for the majority of the rating period and, prior to her appointment, had little interaction with Fagg.

5. Rose decided to change the management team in the Northern District of Iowa. Nonetheless, her managers were all over 40 except for Teresa Baumann, a bright young lawyer whom Rose made First Assistant and, shortly thereafter, Chief of the Civil Division. For a short period of time, Baumann had been a Special Assistant United States Attorney. She had also served as a law clerk to Chief Judge Linda Reade of the Northern District of Iowa. Chief Judge Reade has a reputation of demanding very high-quality work. Baumann is detail-oriented. Her academic career was outstanding. For example, she served as the editor-in-chief of the Iowa Law Review.

6. Rose almost immediately concluded that the Civil Division was not well-managed. While Kudej was highly regarded by lawyers both in the Northern District of Iowa and nationally, Rose believed his management was lax. So, Rose demoted Kudej to the position of "lead civil attorney" and replaced him with Baumann as the new Civil Chief. This added responsibility was in addition to Baumann's duties as First Assistant. Kudej was over 60.

7. Soon after her appointment, Rose sent out a memo that spoke about "succession planning." About the same time, she also made it plain that all attorneys would be required to strictly comply with the time and attendance policies.

8. Almost from the beginning, Rose was in constant contact with the General Counsel's staff of the Executive Office for United States Attorneys ("EOUSA") to assure that her personnel actions regarding Fagg were legally appropriate. In the beginning, the concerns surrounded time and attendance issues, but later the concerns expanded to a wide variety of other far more substantive matters. All of the disciplinary actions, including the transfer decisions, that were taken against Fagg were taken with the approval of, or pursuant to recommendations by, the General Counsel's office. The EOUSA staff is located in Washington, D.C. There is no evidence that the staff at the EOUSA harbored any animosity toward Fagg or that staff of the General Counsel's office were motivated by a desire to discriminate against Fagg on account of her age or because they desired to retaliate against Fagg because she sent the "concerns memo" that will be discussed next.

9. On March 9, 2010, Fagg wrote a "concerns memo" to Rose suggesting that some of the actions taken by Rose raised the possibility of age discrimination. That memo was immediately forwarded to the General

4

Counsel's office. Additionally, Fagg submitted several complaints to the Department of Justice's Equal Employment Opportunity Office ("EEO") complaining of age discrimination and retaliation.

10. After the "concerns memo" was circulated, several formal disciplinary measures were taken by Rose or Baumann against Fagg. All in all, there were over 60 allegations that Fagg had violated department polices. These disciplinary measures included a written reprimand, a temporary transfer to Cedar Rapids (some 250 miles to the east), two suspensions without pay, a permanent transfer to Cedar Rapids, and finally termination. Fagg was terminated after a heated exchange between Fagg and Baumann on January 6, 2011.

11. Some of the incidents for which discipline was imposed were, in my view, minor, and imposing formal discipline for those incidents could be construed as overkill. Others were far more serious and substantive. Virtually all of them were based on facts that a reasonable and objective disciplinary official could have taken as true and, if so, might warrant discipline in the business judgment of an employer.

12. Fagg did not believe that Rose and Baumann knew enough about the civil practice in the Northern District or otherwise to competently manage or supervise the civil caseload or the civil attorneys. She despised being micro-managed. She was not shy about making her views known. In my opinion, there is absolutely no question that Fagg was openly disrespectful of Rose and Baumann.

13. Rose and Baumann were "by-the-book" managers. At times, and in my opinion, their efforts to bring oversight and discipline to the Civil Division, and Fagg in particular, were overly zealous and harsh.

14. The dispute between Rose, Baumann, and Fagg was not about age or about Fagg's "concerns memo" or EEO complaints. On the contrary, this was a clash of cultures. It involved three good people, each of whom were very competent lawyers. Each of these people testified. I was able to observe them first-hand. They were all credible. However, Rose and Fagg are unrepentant "hard heads."

**CONCLUSIONS OF LAW**

The ADEA also makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d).

Without direct evidence of a retaliatory motive, retaliation claims under the ADEA are analyzed under the *McDonnell Douglas* framework—that is, the plaintiff must first establish "(1) that . . . she engaged in statutorily protected activity; (2) an adverse employment action was taken against . . . her; and (3) a causal connection exists between the two events." *Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (internal quotation marks and citation omitted); *see also Betz v. Chertoff*, 578 F.3d 929, 937 (8th Cir. 2009) (to make out claim of retaliation under ADEA, plaintiff must show she participated in protected activity, the defendant treated her in a manner that was materially adverse, and there was a causal relationship between the two).

"If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a non[-]retaliatory reason for the adverse employment action." *Stewart*, 481 F.3d at 1043 (internal quotation marks and citation omitted). If the defendant shows a legitimate, non-retaliatory reason for its actions, the plaintiff must then present evidence showing that the defendant's reason was pretextual and creating a reasonable inference that the defendant acted in retaliation. *Id.*

Assuming Fagg has made out a prima facie case of retaliation, the defendant has asserted and proven a non-retaliatory reason for any and all of the adverse employment actions taken against Fagg. Essentially, the defendant has established and proven that the reason for any and all adverse employment actions was Fagg's refusal to follow the lawful direction and supervision of Rose and Baumann. Fagg has not persuaded me that the asserted reason for the adverse employment actions was a pretext to hide retaliation for opposing age discrimination.

## *CONCLUSION*

Were it not for the lawyers representing the parties, I would be utterly depressed. Mike Carroll, David Goldman, and Amy Davis for Ms. Fagg and Jim Kuhn and Pat Johnson for Mr. Holder are superb, experienced, and practical trial lawyers committed to ethics, civility, professionalism, and legal excellence. They have demonstrated throughout this difficult matter the highest ideals of our profession. In that, there is hope for our profession.

IT IS ORDERED:

1. Upon Plaintiff's motion at the conclusion of trial, Plaintiff's age-discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, is dismissed with prejudice.

2. The foregoing constitutes findings of fact and conclusions of law required by Fed. R. Civ. P. 52(a)(1) on Plaintiff's retaliation claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*.

3. On the claim of retaliation regarding opposition to age discrimination, Plaintiff shall take nothing against Defendant, and her complaint shall be dismissed with prejudice.

4. Judgment will be entered by separate document. The undersigned will enter the judgment, and the Clerk of Court should not do so.

DATED this 12th day of December, 2013.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge